IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES R. MEADOWS                        :
                                        :          CIVIL ACTION
        v.                              :          NO. 16-2074
                                        :
SOUTHEASTERN PENNSYLVANIA               :
TRANSPORTATION AUTHORITY, et al.        :

O'NEILL, J.                                              November 2, 2016

**MEMORANDUM**

Plaintiff James Meadows sues the Southeastern Pennsylvania Transportation Authority (SEPTA), SEPTA Police Officers Edward Kaiser and Troy Parham setting forth claims under 42 U.S.C. § 1983 and Pennsylvania state law.  In his amended complaint, plaintiff alleges the defendant officers harassed and hit him, then arrested him without probable cause.  Defendants filed a partial motion to dismiss plaintiff's amended complaint, Dkt. No. 14, and plaintiff responded, Dkt. No. 15.  I will grant defendants' motion in part and dismiss plaintiff's claims in Count I with leave to amend.[1]  I will grant defendants' motion with respect to Counts IV and V against the officer defendants in their official capacities and deny it with respect to the officer defendants in their individual capacities.  I will also deny defendants' motion with respect to plaintiff's request for punitive damages.

**BACKGROUND**

According to the amended complaint, plaintiff was waiting for a train on a bench at Suburban Station in Philadelphia on June 3, 2014, at about 7:30am, charging his phone and note pad, when defendant, Officer Kaiser, confronted him.  Dkt. No 9 (Am. Compl.) at ECF p. 2–3.  Officer Kaiser asked plaintiff if he was catching a train and plaintiff said he was.  Id.  Officer

---

[1] Although there is no enumerated "Count I" in the amended complaint, I will refer to paragraphs E through I of the amended complaint as Count I.

Kaiser then told him he could not have his devices plugged in there and ordered him to "get the F out of here" and go catch his train.  Id.  Plaintiff unplugged his phone and note pad and started to head toward the platform when Officer Kaiser twice pushed him from behind.  Id.  As plaintiff was walking down the stairs to the platform, Officer Kaiser again pushed him, nearly causing him to fall down the steps.  He also threatened to put plaintiff in the hospital.  Id.

When plaintiff got to the platform, Officer Kaiser ordered him to sit down.  Id.  Plaintiff refused, responding that he was not under arrest and preferred to stand.  Id.  Plaintiff and Officer Kaiser began arguing.  Id. at ECF p. 13.  Then Officer Kaiser attempted to push plaintiff in his face, and plaintiff "tried to block it and pushed back."  Id. at ECF p. 13, 21 ¶ 14.  At this point another officer—defendant Officer Troy Parham—grabbed plaintiff by his neck from behind and threw him to the ground.  Id. at ECF p. 13.  Officer Kaiser then punched him while Officer Parham held him down.  Id.  Plaintiff felt severe pain in his right shoulder.  Id.  Officer Parham handcuffed plaintiff and "slammed" him into a steel bench, further injuring his shoulder.  Id. at ECF p. 13, 21 ¶ 14.

Plaintiff told the officers he needed to go to the hospital for a broken shoulder.  Id.  Instead, the officers took plaintiff to Hall-Mercer Psychiatric Hospital "for the purposes of a 302 admission"—a commitment pursuant to section 7302 of Pennsylvania's Mental Health Procedures Act of 1973, 50 Pa. Const. Stat. §§ 7301–7503, for involuntary emergency examination and treatment.  Id. at ECF p. 13, 21 ¶ 15.  A doctor at the hospital saw plaintiff's swollen shoulder and told the officers to take plaintiff to the emergency room.  Id. at ECF p. 14,

21 ¶ 15.  They did so, and plaintiff was told he had a dislocated shoulder and torn rotator cuff, among other injuries.  Id. at ECF p. 14, 21 ¶ 17.

Plaintiff was operated on and then taken back to Hall-Mercer Psychiatric Ward.  Id. at ECF p. 14.  There, the doctor told plaintiff the officers' account of what had happened:  that plaintiff had tried to kill himself in front of a train and got injured when the officers had tried to help him.  Id.  The doctor examined plaintiff, found he posed no threat to himself or others and let him leave.  Id.

About three weeks later, plaintiff reported this incident to Lieutenant Dougherty at SEPTA Police Internal Affairs.  Id.  He reported it again two weeks later to Captain Wiki.  Id.  The officers told plaintiff they would look into the situation and contact him.  Id. [2]  On September 16, 2014, Lieutenant Dougherty called plaintiff and asked him to come to SEPTA Police headquarters so he could make copies of plaintiff's medical records.  Id. at p. 15.  When plaintiff arrived with his records, he was arrested and charged with aggravated assault, terroristic threats, resisting arrest, recklessly endangering another and disorderly conduct.  Id. at ECF p. 14, 16.  Plaintiff was held in jail until December 29, 2014, when all charges were dropped.  Id. at ECF p. 16.  As a result of his injuries, plaintiff has had surgery and several hospital visits.  Id. at ECF p. 15.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

---

[2] Plaintiff has not made these officers defendants in the present action but seeks to do so after discovery reveals their full names.  See id. at ECF p. 6.

factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true." Id. (citations omitted). This "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id. at 556. "To prevent dismissal, all civil complaints must set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated.
> The District Court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions. Second, a
> District Court must then determine whether the facts alleged in the
> complaint are sufficient to show that the plaintiff has a "plausible
> claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679. The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

Because this plaintiff is proceeding pro se, I will "liberally construe his pleadings, and . . . apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name." Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). Pro se pleadings are held to "less

stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Unless amendment would be inequitable or futile, the dismissal will be with leave to amend, which gives the plaintiff an opportunity to plead sufficient facts to satisfy the standard described in this opinion. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

At the motion to dismiss stage the court considers only the plaintiff's complaint, not exhibits attached to plaintiff's response to defendant's motion. However, plaintiff can attach exhibits to any future amended pleadings. Fed. R. Civ. P. 10(c).

## DISCUSSION

### I.    Claims Against SEPTA

In order for plaintiff's claims in Count I against SEPTA to survive a motion to dismiss, plaintiff must allege SEPTA had a policy or custom that resulted in a violation of his rights. I find that plaintiff does not sufficiently allege the existence of a policy or custom. Therefore, I will dismiss plaintiff's claims in Count I.[3]

Plaintiff can only recover against SEPTA under § 1983 if he alleges SEPTA itself, rather than one of its employees, caused his injury through a policy or custom. Monell v. Dep't of Soc. Serv. of the City of N.Y., 436 U.S. 658, 694 (1978). SEPTA is a Pennsylvania government agency that is treated as a municipality for purposes of claims brought under § 1983. Searles v. SEPTA, 990 F.2d 789, 790 (3d Cir. 1993); Feingold v. SEPTA, 517 A.2d 1270, 1275–76 (Pa.

---

[3]    Defendants describe Count I as referring to paragraphs C through I. Dkt. No. 14 at ECF p. 2 n.1. However, I will not consider paragraphs C and D with respect to defendant's motion as to Count I because I find these paragraphs, which describe officers' wrongful conduct in violation of their police duties and established policies, do not relate to SEPTA's liability but rather to plaintiff's allegations under § 1983 against individual officers. Am. Compl. at ECF p. 22. Both paragraphs relate to Counts II and III, on which defendants do not move for dismissal. Therefore, I do not dismiss paragraphs C and D of plaintiff's amended complaint.

1986).  Therefore, unlike other employers, SEPTA is not liable "*solely* because it employs a tortfeasor" under the *respondeat superior* theory.  Monell, 436 U.S. at 691.  I will refer to plaintiff's claim against SEPTA as his "Monell claim."

In order to show the existence of a policy or custom, plaintiff must offer "support that would suggest that [the things that] happened to him . . . were not idiosyncratic actions of individual public actors."  Elias v. Twp. of Cheltenham, No. 14–6117, 2015 WL 356966, at *4 (E.D. Pa. Jan. 28, 2015) (citations and internal quotation marks omitted).  A plaintiff cannot "simply project [his] specific injuries onto a municipal scale."  Moresi v. City of Phila., No. 15-38, 2015 WL 4111724 at *4 (E.D. Pa. July 8, 2015); Levine v. Rodden, No. 15-574, 2015 WL 2151781 at *3 (E.D. Pa. May 7, 2015) (dismissing claim when the complaint included only one incident of the purported municipal custom of failing to "adequately investigate, supervise, or discipline police officers accused of committing constitutional violations").  "Policy is made when a decisionmaker possessing final authority to establish [a government] policy with respect to the action issues an official proclamation, policy, or edict."  Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citation, alteration and internal quotation marks omitted).  Custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir.1990) (citations omitted).

Plaintiff's Monell claim against SEPTA sets forth three bases for recovery.  First, plaintiff asserts liability based on a failure to investigate or discipline (paragraphs E and I).  Second, plaintiff alleges a failure to train (paragraph F).  Finally, plaintiff contends that SEPTA failed to supervise its officers or prevent such incidents (paragraphs G and H).  I find that

plaintiff's allegations of a single incident are not sufficient to sustain his claims because they do not show the existence of a policy or custom that resulted in his injury.

A.     **Failure to Investigate or Discipline**

Plaintiff does not sufficiently allege facts to support his claim that SEPTA had a policy or custom of not investigating or disciplining officers who violated others' civil rights.  He alleges:

> E.  The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;
>
> . . . .
>
> I.   Failure to properly investigate matters in which police officers use reasonable force.

Am. Compl. at ECF p. 22.  Although plaintiff states that he complained to officers about his mistreatment and SEPTA did not discipline Officers Kaiser and Parham, this single instance of failing to discipline is not sufficient to show a policy or custom of such failures.

"[T]o sustain a § 1983 claim for municipal liability, the plaintiff must simply establish a municipal custom coupled with causation—i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [the plaintiff's] injury."  Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996); Hellyer v. Cty. of Bucks, No. 10-2724, 2014 WL 413874, at *5 (E.D. Pa. Jan. 31, 2014) (citations omitted).[4]  For example, in Hellyer, the plaintiff claimed that the

---

[4]      Although the Court of Appeals has stated that a plaintiff can state a claim for supervisory liability by showing a single offending incident coupled with a supervisor's inaction, see e.g., Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997) (requiring plaintiff to show: (1) an offending incident against plaintiff *or* a prior pattern of similar incidents and (2) a supervisor's inaction which communicated a message of approval to the offending subordinate) (emphasis added), no case from the Court of Appeals has held that a plaintiff who alleged a single incident established a failure to train claim against a municipality.  Rather, the rule in Bonenberger comes from Chinchello v. Fenton, which described the liability of a supervisor for his subordinate's conduct, not liability of a municipality for its employees' conduct.  805 F. 2d

prison's "custom or unwritten policy was to ignore sexual abuse and the prison rules that required that incidents be reported and investigated." Id. She backed up these conclusory claims with factual allegations of offending incidents: "[p]laintiff points to a series of civil rights actions based on similar facts, previous convictions of other [prison] correctional officers for felony sexual assault, and a sex scandal at [the prison] in the late 1990s." Id. She also provided factual allegations of supervisory indifference: "[p]laintiff spoke with a host of prison and county officials about the offending officers' conduct. . . . Plaintiff further spoke with Bucks County Detectives about the constitutional violations she had suffered. . . . Despite these conversations, county officials remained indifferent to Plaintiff's plight and failed to institute procedures which would remedy the situation." Id. Based on these factual allegations of defendants' repeated violations, the plaintiff's Monell claim survived a motion to dismiss. Id.

    In contrast, plaintiff here does not provide factual allegations showing that policymakers were aware of the use of excessive force in the past and failed to take precautions against future violations. Instead, plaintiff describes making two reports to SEPTA Police Internal Affairs, first with Lieutenant Dougherty and then with Captain Wiki, about his own experience. Am. Compl. at ECF p. 14.[5] Plaintiff does not allege repeated instances of abuse—much less instances that

---

126, 133 (3d Cir. 1986). Even so, Chinchello and the cases it cites involved multiple incidents of violations. Id. at 133–34, citing Orpiano v. Johnson, 632 F.2d 1096, 1101 (4th Cir. 1980), cert. denied, 450 U.S. 929 (1981) and Sims v. Adams, 537 F.2d 829 (5th Cir. 1976).

[5]    I will consider these allegations even though they only appear in plaintiff's original complaint because he attached that complaint to his amended complaint. Plaintiff filed his first, handwritten complaint on May 20, 2016. Dkt. No. 4. He then filed a typed amended complaint on June 28, 2016 that included the original complaint, attached. Dkt. No. 9. An amended complaint "supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading." West Run Student Hous. Assoc., LLC v. Huntington Nat'l Bank, 712 F. 3d 165 (E.D. Pa. 2013) (internal quotations and citations omitted). Plaintiff's typewritten complaint refers to his amended complaint in paragraph 11. Am. Compl. at ECF p. 20. Because of this reference, and because it is attached to his amended complaint, I will consider both the handwritten and the typewritten documents as his "amended

occurred before his own experience—that would have put SEPTA on notice of a need to investigate or discipline the defendant officers. Plaintiff's two reports about an isolated incident are not sufficient to allege a custom or policy of a failure to investigate or discipline.

**B.      Failure to Train**

Plaintiff's failure to train claim is also not supported by sufficient factual allegations. He alleges a "[f]ailure to have proper training, use of force re-training, sensitivity training, psychiatric evaluations, or supervisory briefing/discussion with members of its police department with prior complaints of excessive use of force." Am. Compl. at ECF p. 22 ¶ F. Plaintiff has not shown SEPTA acted with deliberate indifference to his rights because he does not allege facts that show a pattern of violations or a failure to equip officers with specific tools that would have prevented his injury. Therefore, I will dismiss this claim.

A claim against a governmental agency for failure to train must allege "deliberate indifference" to an individual's civil rights. Kelly v. Borough of Carlisle, 622 F.3d 248, 265 (3d Cir. 2010). This ordinarily requires alleging a pattern of violations. Id. However, "in the absence of an underlying pattern of violations," plaintiff can show the violation of his rights was "a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Id. at 265 (citations and quotations omitted). A successful complaint claiming deliberate indifference on this basis must allege that the plaintiff's injury was the result of a specific training deficiency. See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997) (holding that plaintiff must allege the policy or custom "was the 'moving force' behind the [constitutional] violation"). For example, in Hall v. Raech, the plaintiff claimed

---

complaint." However, it is preferable that any future amended complaints contain all factual allegations in a single document.

defendant officers did not recognize his diabetic condition despite several clues because of a failure to train officers to distinguish between criminal activity and medical emergencies.  No. 08–5020, 2009 WL 811503, at *1, *5 (E.D. Pa. Mar. 25, 2009).  He alleged this was a recurring issue:  prior events evidenced a need for such training.  Id.; see also Moore v. Ryan, No. 12-1875, 2013 WL 1339053, at *7 (M.D. Pa. Apr. 1, 2013) (refusing to dismiss a complaint where it alleged "more than a reference to a generic custom or policy").  He also established causation: that the failure to train officers to recognize diabetic conditions resulted in his injury.  2009 WL 811503, at *5.

Plaintiff shows neither a pattern of violations nor that a failure to properly equip officers with specific tools to handle a recurring issue resulted in his injury, and therefore he has not demonstrated the deliberate indifference necessary to state a claim of failure to train.  Plaintiff does not show that officers lacked a specific tool, but rather suggests general areas in which officers have received deficient training.  Although his allegation of a "[f]ailure to have . . . psychiatric evaluations"—presumably evaluations of people the police encounter who are unstable—is closer to alleging the need for a specific tool, plaintiff does not show that a failure to equip officers with this tool resulted in his injury.  Rather, plaintiff's own allegations contradict the officers' story that plaintiff was mentally unstable and therefore that the officers would have behaved differently had they been trained to implement a psychiatric evaluation.  Therefore, I will dismiss plaintiff's claim in paragraph F for failure to train.

C.     **Failure to Supervise**

Plaintiff's remaining claims in paragraphs G and H about SEPTA's policies are also not sufficiently pled.  Plaintiff alleges "[f]ailure to properly supervise and/or control its officers and detectives" and failure to prevent its officers from injuring plaintiff "when SEPTA knew or had

reason to know of [their] conduct." Am. Compl. at ECF p. 22 ¶¶ G, H.  These claims are not supported by factual allegations.

A plaintiff's claim will be dismissed if the complaint merely "amounts to a conclusory assertion that what happened at the scene [of a single incident] was ordered by the supervisors." Santiago v. Warminster Twp., 629 F.3d 121, 131 (3d Cir. 2010) (affirming the district court's dismissal for failure to state a claim).  In Santiago, the complaint did not allege that the defendant's actions "could fairly be said to be policy."  Id. at 135.  "To hold otherwise would allow a plaintiff to pursue a supervisory liability claim anytime a planned operation resulted in excessive force, merely by describing the force used and appending" a generic phrase ascribing liability to a supervisor.  Santiago, 629 F.3d at 135.

Plaintiff's allegations in paragraphs G and H are generic phrases that are not supported by factual allegations.  Plaintiff does not allege repeated incidents where officers were improperly supervised or controlled to support his claim in paragraph G.  Similarly, he does not provide factual allegations to support his claim in paragraph H that SEPTA knew that Officers Kaiser and Parham would violate his rights and failed to prevent such violations.  Moreover, plaintiff does not show the existence of a custom or policy of failing to prevent injury with respect to paragraph H as required under Monell.  436 U.S. at 694.  Therefore, I will also dismiss plaintiff's claims in paragraphs G and H.

> **D.   Conclusion**

In each of his five claims against SEPTA in Count I, paragraphs E through I, plaintiff does not allege sufficient facts to support the allegations of the existence of a custom of violations.  Plaintiff's single experience, even though traumatizing, cannot on its own serve as the basis for his claims against SEPTA.  Such single incidents are dealt with through law suits

against the offending officers rather than through a suit against the state agency that employs those officers.  I will dismiss Count I of plaintiff's complaint against defendant SEPTA with leave to amend to the extent plaintiff can include sufficiently specific allegations showing the existence of a policy or custom that led to the alleged violations of his constitutional rights.  Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

## II.    State Law Tort Claims

I will dismiss plaintiff's state law claims of malicious prosecution, assault and battery and intentional infliction of emotional distress against Officers Kaiser and Parham (Counts IV and V) in their official capacities but not in their individual capacities.

Defendants appear to have understood these claims to be against the officers in their official capacities only.  Defs.' Br. at p. 6–7.  Plaintiff does not specify whether he sues defendants in their official capacities or in their individual capacities.  Therefore, I must look to "the complaints and the 'course of proceedings.'"  Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990), aff'd, 502 U.S. 21 (1991).  Plaintiff brings the suit against each officer "acting within the course and scope of his employment, under color of state law, and pursuant to the customs, policies and practices of the Septa Police Department."  Am. Compl. at ECF p. 23–24 ¶¶ 27, 32. He alleges they acted "intentionally, sadistic[ally], and maliciously."  Id.  Liberally construing plaintiff's pro se amended complaint, I find he brings claims against the officers in both their official and their personal capacities.  Dluhos, 321 F.3d at 369.

To the extent the claims are against the officers in their official capacities, defendants are correct that they are barred by sovereign immunity and are not subject to any of the exceptions in the Sovereign Immunity Act, 42 Pa. Const. Stat. § 8521–22.  Sovereign immunity is the legal

principle that the state or its agents are not subject to suit under state law. [6]  The Pennsylvania

legislature waived sovereign immunity for a few categories of acts that are irrelevant here.  42

Pa. Const. Stat. § 8522.  SEPTA is a state agent and entitled to the protections of sovereign

immunity.  See, e.g., Spaddy v. Se. Pa. Transp. Auth., No. 15-2995, 2016 WL 3914034, at *8

(E.D. Pa. July 20, 2016).  A suit against an officer in his "official capacity" is a suit against the

officer's employer—here, SEPTA—which triggers sovereign immunity.  Will v. Mich. Dep't of

State Police, 491 U.S. 58, 71 (1989).  Therefore, plaintiff cannot sustain a claim against

defendants in their official capacities.

     However, because I find plaintiff has also sued defendants in their personal capacities, I

will not dismiss his state law claims.  A suit against an officer in his personal capacity is a suit

against the officer as an individual and does not trigger sovereign immunity to the extent that the

acts constitute "a crime, actual fraud, actual malice, or willful misconduct."  42 Pa. Cons. Stat. §

8550.  Willful misconduct encompasses intentional torts like those plaintiff alleges.  See Sanford

v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006).  Moreover, defendants do not move to dismiss any

claims brought against them in their personal capacities.  Therefore, I will not dismiss Counts IV

and V.

## III.   Punitive Damages

     I will deny defendant's motion to strike plaintiff's request for punitive damages.

Although defendant is correct that plaintiff is not entitled to punitive damages from government

---

[6] Plaintiff argues defendants are not immune because the Tort Claims Act, 28 U.S.C. § 1346(b), authorized courts to hold United States agencies, officers and employees liable for torts "just as the courts would hold individual defendants liable under similar circumstances."  Dkt. No. 15 at ECF p. 8.  But the Tort Claims Act only applies to *federal* agencies, officers, and employees.  It does not apply to *state* agencies like SEPTA.  Rather, when SEPTA and its officers are sued for violating state law, they are protected by Pennsylvania's law of sovereign immunity.

agencies or from defendants sued in their official capacities, a plaintiff can recover punitive damages against individuals sued in their individual capacities when he alleges facts suggesting they acted with callous indifference to his federally protected rights.  Compare Boice v. Se. Pa. Transp. Auth., No. 05–4772, 2007 WL 2916188, at * 16 (E.D. Pa. Oct. 5, 2007) (holding that SEPTA is immune from punitive damages) and Gregory v. Chehi, 843 F.2d 111, 119–20 (3d Cir.1988) ("Punitive damages cannot be recovered from defendants in their official capacities."), with  Smith v. Wade, 461 U.S. 30, 57 (1983) ("[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.")  Because I find plaintiff sues Officers Kaiser and Parham in their individual capacities and alleges facts suggesting they acted with callous indifference to his rights, I will not strike his request for punitive damages.  A decision as to whether the claim for punitive damages will go to the jury will be made at the conclusion of plaintiff's case.

An appropriate Order follows.