IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES R. MEADOWS                          :
                                                      :          CIVIL ACTION
     v.                                   :       NO. 16-2074
                                                      :
SOUTHEASTERN PENNSYLVANIA                 :
TRANSPORTATION AUTHORITY, et al.          :

O'NEILL, J.                                                           January 31, 2017

### MEMORANDUM

Plaintiff James Meadows sues the Southeastern Pennsylvania Transportation Authority (SEPTA) and SEPTA Police Officers Edward Kaiser and Troy Parham setting forth claims under 42 U.S.C. § 1983 and Pennsylvania state law. Dkt. No. 23 (Sec. Am. Compl.). On November 2, 2016, I granted in part and denied in part defendants' motion to dismiss plaintiff's first amended complaint. Dkt. No. 17. In his second amended complaint, plaintiff alleges facts very similar to those in his first amended complaint and states the same claims. Dkt. No. 23. Defendants again filed a partial motion to dismiss, Dkt. No. 27, and plaintiff responded, Dkt. No. 29. I will again grant defendants' motion in part, dismissing plaintiff's claims against SEPTA in Count I, and deny it in part, declining to dismiss Counts IV and V against the officers.

### BACKGROUND[1]

According to the second amended complaint, plaintiff was sitting on a bench at Suburban Station in Philadelphia on June 3, 2014, at about 7:30 am, charging his phone and note pad, when defendants Officers Kaiser and Parham confronted him. Dkt. No. 23 (Sec. Am. Compl.) ¶¶ 10–11. Plaintiff told Officer Kaiser that he was waiting for a train and proceeded to the platform area. Id. at ¶ 12. As he was walking, Officer Kaiser twice pushed him from behind, at one point

---

[1] This summary of the factual allegations is drawn largely from my November 2, 2016 Order, Dkt. No. 17, with updated citations to the second amended complaint.

nearly causing him to fall down the steps. Id. ¶ 13. He also threatened to put plaintiff in the hospital. Id.

When plaintiff got to the platform, Officer Kaiser ordered him to sit down. Id. at ¶ 14. Plaintiff refused, responding that he preferred to stand. Id. at ¶ 14. Then Officer Kaiser attempted to push plaintiff in his face and plaintiff "tried to block Officer Kaiser and pushed back." Id. at ¶ 14. Officer Parham then grabbed plaintiff by his neck from behind and threw him to the ground. Id. at ¶ 14. Officer Kaiser punched him while Officer Parham held him down. Id. at ¶ 14. Plaintiff felt severe pain in his right shoulder. Id. at ¶ 14. Officer Parham handcuffed plaintiff and slammed him against a steel bench, further injuring his shoulder. Id. at ¶ 14.

Plaintiff told the officers he needed to go to a hospital emergency room for a broken shoulder. Id. at ¶ 15. Instead, the officers took plaintiff to Hall-Mercer Psychiatric Hospital for the purposes of an involuntary commitment pursuant to Section 302 of Pennsylvania's Mental Health Procedures Act, 50 Pa. Cons. Stat. §§ 7301–7503. Id. at ¶ 15. A doctor at the hospital determined that plaintiff's shoulder needed immediate medical treatment and told the officers to take plaintiff to the emergency room. Id. at ¶ 15. They did so, and plaintiff was told he had a dislocated shoulder, among other injuries. Id. at ¶ 16.

Plaintiff was operated on and then taken back to Hall-Mercer Psychiatric Ward. Id. at ¶ 16. There, the doctor told plaintiff the officers' account of what had happened: that plaintiff had tried to kill himself in front of a train and got injured when the officers had tried to help him. Id.

at ¶ 17.  The doctor examined plaintiff, "apparently concluded he was not a threat to himself or others" and let him leave.  Id. at ¶ 18.

Subsequently, plaintiff filed a complaint with the SEPTA Transit Police Department of Internal Affairs, describing this incident to Lieutenant Dougherty and Captain Wiki.  Id. at ¶ 19.  The officers told plaintiff they would look into the incident.  Id. at ¶ 19.  On September 16, 2014, Lieutenant Dougherty called plaintiff and asked him to come to SEPTA Police headquarters so he could make copies of plaintiff's medical records.  Id. at ¶ 20.  When plaintiff arrived with his records, Lieutenant Dougherty copied the records and then plaintiff was arrested.  Id. at ¶ 20.  Plaintiff was charged with aggravated assault, terroristic threats, resisting arrest, recklessly endangering another and disorderly conduct.  Id. at ¶ 21.  He was held in jail until December 29, 2014, when all charges were either withdrawn or dismissed.  Id. at ¶¶ 22.  As a result of the officers' conduct, plaintiff has suffered physical and emotional injuries, scarring, surgery and several hospital visits, among other harms.  Id. at ¶¶ 23–27.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true."  Id. (citations omitted).  This "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal

3

evidence of" the necessary element. Id. at 556. "To prevent dismissal, all civil complaints must set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211, citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

## DISCUSSION

Plaintiff brings five claims: Count I is a 28 U.S.C. § 1983 claim against SEPTA, a government agency that is treated as a municipality for purposes of such claims. Sec. Am. Compl. ¶¶ 33–38; Searles v. SEPTA, 990 F.2d 789, 790 (3d Cir. 1993); Feingold v. SEPTA, 517 A.2d 1270, 1275–76 (Pa. 1986). Counts II and III are § 1983 claims against each defendant officer for violating plaintiff's Eighth, Fourth and Fourteenth Amendment rights. Id. ¶¶ 39–48. Counts IV and V are state tort law claims against each defendant officer for assault, battery, intentional infliction of emotional distress and malicious prosecution. Id. ¶¶ 49–54. Defendants move to dismiss Counts I, IV and V. I will grant their motion with respect to Count I and deny it with respect to Counts IV and V.

### I.    Claims Against SEPTA

In order for plaintiff's claims in Count I against SEPTA to survive a motion to dismiss, plaintiff must allege SEPTA had a policy or custom that resulted in a violation of his rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Plaintiff alleges largely the same facts

that he alleged to support Count I of his first amended complaint, which I dismissed for failure to allege facts showing the existence of a custom or policy under Monell. Dkt. No. 17, 5–12. Because the law applicable to my decision is described in full in my November 2 Order, Dkt. No. 17, I provide only a brief explanation here.

As before, plaintiff does not allege facts showing that policymakers were aware of the use of excessive force in the past and failed to take precautions against future violations; he does not allege repeated incidents where officers were improperly supervised or controlled; and he does not show that a failure to properly equip officers with specific tools to handle a recurring issue resulted in his injury. See Dkt. No. 17, 7–11.

Although plaintiff now alleges a failure to train officers "to properly interact with homeless customers such as Plaintiff," Sec. Am. Compl. ¶ 35(a), this does not state a claim for failure to train. In the absence of allegations of a pattern of violations, a plaintiff can state a claim against a municipality where he shows that the violation of his rights was "a highly predictable consequence of a failure to quip law enforcement officers with specific tools to handle recurring situations." Kelly v. Borough of Carlisle, 622 F.3d 248, 265 (3d Cir. 2010). For example, in Hall v. Raech, the plaintiff survived a motion to dismiss where he alleged a failure to train officers to recognize a diabetic condition, which caused the officers to misunderstand his actions and violate his rights. No. 8-5020, 2009 WL 811503 (E.D. Pa. Mar. 25, 2009). Here, however, plaintiff does not allege that he acted in a specifically unusual way because of his homelessness and that the officers were unequipped to respond properly to that behavior. Therefore, this allegation does not state a claim for failure to train.

As plaintiff has already had two opportunities to amend, is now represented by counsel and currently alleges facts nearly identical to those in Count I of his first amended complaint,

allowing further amendment would be futile.  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).  I therefore dismiss plaintiff's claims in Count I with prejudice.

## II.     State Law Tort Claims

I will deny defendants' motion to dismiss plaintiff's state law claims of malicious prosecution, assault and battery, intentional infliction of emotional distress and malicious prosecution against Officers Kaiser and Parham (Counts IV and V) because, at the pleadings stage, plaintiff alleges defendants acted in a way that is sufficiently outrageous to be considered outside the scope of their employment and therefore these state claims are not barred by sovereign immunity.[2]

While Pennsylvania immunizes Commonwealth employees from liability under state tort law for actions within the scope of their employment, an employee can be held liable in tort for actions outside that scope.  1 Pa. Cons. Stat. § 2310; 42 Pa. Cons. Stat. §§ 8501, 8522; see also Taylor v. SEPTA, No. 06-3426, 2007 U.S. Dist. LEXIS 26022 at *11 (E.D. Pa. April 5, 2007).

> Conduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer; and if force is intentionally used by the employee against another, it is not *unexpected* by the employer.

Natt v. Labar, 543 A.2d 223, 225 (Pa. Commw. Ct. 1988).  The relevant question in determining whether an officer acted outside the scope of his employment is whether the force used by the officer was "of the kind that may reasonably be expected of a police officer under similar circumstances."  Ickes v. Grassmeyer, 30 F.Supp. 3d 375, 397–99 (W.D. Pa. 2014).  "To go

---

[2]     Defendants do not move to dismiss plaintiff's § 1983 claims for violation of his constitutional rights (Counts II and III).  Sovereign immunity does not protect defendants against such claims.  Haver v. Melo, 502 U.S. 21, 30–31 (1991).

6

beyond the scope of employment . . . an individual engaging in conduct that is otherwise incidental to the performance of work-related duties must act with a high degree of outrageousness." Id. at 399. "Since an employee is generally authorized to use only 'reasonable' measures to achieve a result desired by his or her employer, an 'outrageous' act may lie beyond the scope of his or her employment even where it constitutes 'a means of accomplishing an authorized result.'" Zion v. Nassan, 283 F.R.D. 247, 267 (W.D. Pa. 2012) citing Lunn v. Yellow Cab Co., 169 A.2d 103, 104 (Pa. 1961). Such force must be "excessive and so dangerous as to be totally without responsibility or reason." Strothers v. Nassan, No. 08-1624, 2009 U.S. Dist. LEXIS 30208 at *9 (W.D. Pa. April 9, 2009).

In Ickes v. Grassmeyer, the plaintiff alleged the defendant officers used "roughhouse tactics" in arresting him for traffic infractions. 30 F.Supp. at 379, 399. The plaintiff claimed he was fearful of the officers and therefore "declined to exit the vehicle," and that then the officers smashed his window and dragged him out, pulling him over broken glass and placing him on a gravel road, then tightly cuffing his hands. Id. at 379. The plaintiff was later charged with resisting arrest, disorderly conduct, harassment and several traffic violations. Id. The violent arrest "'caused his wrists to bleed,' leaving him with 'scratches and bruises.'" Id. at 399. The court found that these actions were not sufficiently outrageous "to place their conduct beyond the scope of their employment," and so the court granted defendants' motion to dismiss the assault and battery claims. Id.

By contrast, in Strothers v. Nassan, the court found the plaintiff had sufficiently alleged facts showing the defendant officer acted outside the scope of his employment. 2009 U.S. Dist. LEXIS 30208 at *19–32. The plaintiff alleged the officer, who was white, saw the plaintiff, who was black, arguing with several black women outside a bar. Id. at *2. Allegedly the officer

7

"violently apprehended" two of the women.  Id.  The officer then "seized [the plaintiff] and threw him to the ground," made comments about his and the women's race, and "threw [the plaintiff] against a car, handcuffed him, and placed him in the back of a police car."  Id. at *3.  He later cited the plaintiff for disorderly conduct and public drunkenness, charges which the plaintiff claimed were groundless.  Id.  As a result, plaintiff's "left ankle was severely fractured, and the muscles, ligaments, tendons, tissues and nerves in the affected areas of his body were damaged."  Id. at *3–*4.  The court admitted that the plaintiff "was cited for disorderly conduct and public drunkenness, which" suggested "that [the defendant] seized him pursuant to his duties as a police officer."  Id. at *32.  However, because the plaintiff alleged "he was seized 'without reason,' and under circumstances not calculated to serve the interests of the [Pennsylvania State Police]," he overcame the defendant's sovereign immunity defense at the pleading stage.  Id.

     Plaintiff's allegations here are similarly sufficient to survive at the pleadings stage.  He alleges defendant officers acted "willfully, wantonly, deliberately, maliciously and/or with reckless disregard of plaintiff's . . . rights," Sec. Am. Compl. ¶ 30, when they pinned him down, punched him and threw him into a metal bench, dislocating his shoulder.  Sec. Am. Compl. ¶¶ 10–14.  Unlike in Ickes, he alleges they did so without grounds for apprehending him.  Id.  The extent of the injury and the alleged nature of the arrest are similar to those in Strothers and more severe than those alleged in Ickes.  I will follow Strothers and allow plaintiff to engage in discovery regarding the circumstances surrounding the defendants' actions and whether their employer would expect the use of such force in the circumstances.  2009 U.S. Dist. LEXIS 30208 at *32; Natt, 543 A.2d at 225.  Therefore, I will not dismiss Counts IV and V.

     An appropriate Order follows.